**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donnie Lee COOK, Defendant-Appellant.**

**No. 80-2151.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 17, 1981.

Decided Jan. 7, 1982.

H. Carl Runge, Jr., Collinsville, Ill., for defendant-appellant.

Richard Lloyd, Asst. U. S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, WOOD and CUDAHY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

In this appeal from the district court's denial of a motion to vacate a guilty plea, defendant-appellant Donnie Lee Cook claims that the Government breached the terms of its plea agreement and that he should be permitted to plead anew to the charges against him. We agree and reverse.

I

On December 13, 1979, Donnie Lee Cook was charged with one count of conspiracy to distribute cocaine, three counts of distributing cocaine and one count of using a communication facility to facilitate acts constituting a felony, contrary to 21 U.S.C. §§ 846, 841(d)(1), and 843(b), respectively. Cook originally pleaded not guilty to all of the charges but later entered an *Alford*[1] plea to one count of distributing cocaine, pursuant to an agreement with the Government. In return for his plea, the Government agreed to dismiss the remaining counts of the indictment, "make no recommendation whatsoever as to any possible punishment," and to "not offer anything at all in aggravation." After assuring himself that the plea was being made knowingly and voluntarily, the trial judge accepted the agreement and Cook's guilty plea.

Cook was sentenced to seven years imprisonment with an additional special parole term of three years. Within thirty days, Cook filed a motion to vacate his plea on the ground that the Government had violated the terms of the agreement by making information contained in its case file available to the probation officer for inclusion in the pre-sentence report to the court. Defendant claimed that the Government's conduct constituted a breach of its promise to "not offer anything at all in aggravation" of his sentence and that he should therefore be allowed to withdraw his plea.[2]

1. An *Alford* plea is one in which a defendant maintains his innocence but nevertheless decides to waive his right to a trial and accept sentence in the belief that he would be found guilty anyway. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The acceptance of such a plea deserves the utmost care and consideration to insure that it is made with full knowledge of its consequences. The Department of Justice regards such pleas as "particularly undesirable when entered as part of an agreement with the government." United States Department of Justice, Principles of Federal Prosecution, p. 30 (1980).

2. Cook also claimed that much of the information contained in the report was uncorroborated hearsay involving events not within the scope of the indictment. However, we do not understand him to be pressing that claim here. In any event, it is well established that "a trial

At a hearing on the motion, the probation officer assigned to the case testified that in preparing the presentence report he had followed his standard practice of reviewing the Government's file in the case. He stated that the Government's file contained reports by agents of the Illinois Department of Law Enforcement's Division of Criminal Investigation (DCI), which had conducted the investigation out of which the charges against Cook arose. It also contained an FBI "rap sheet" which listed Cook's prior arrests. The probation officer testified that he incorporated into the pre-sentence report certain information from that file. He further testified, and it is not here in dispute, that no one from the United States Attorney's Office volunteered or recommended that any particular information concerning the case be included in the probation report. Bad faith on the part of the Government was not claimed.

At the conclusion of the hearing, the district court denied the motion and this appeal followed.

## II

It is unquestionably the law that "when a plea rests in any significant degree on a promise or agreement of the prosecution, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). The issue presented in this case is whether the Government breached its promise to offer nothing in aggravation of Cook's sentence by allowing information in its possession to be included in the probation officer's pre-sentence report to the court.

There is no dispute that some of the more damaging background information contained in the pre-sentence report concerning Cook came from the Government's file. It appears that whatever the Government would have directly offered in aggravation, were it not for the plea agreement, was made available from its file to the probation officer for his report. For example, the pre-sentence report states with respect to a lounge owned by Cook, "[t]he lounge is reported to be a major distribution center for cocaine and marijuana in that area, and the defendant is reported to be the head of the organization which is distributing those drugs." The report later continues:

> According to DCI investigative reports which contain statements by codefendant Roderick Bailey, an estimated twelve to fourteen individuals dealt drugs for Donnie Lee Cook in the Alorton and E. St. Louis area. Bailey estimated that approximately seven to eight pounds of marijuana was sold daily through Donnie Lee Cook's "Talk of the Town" Lounge in Alorton and a pool room owned by Cook at 25th and State in E. St. Louis. In terms of cocaine transactions, Bailey advised that larger transactions were usually dealt directly by Cook and closer associates.

The probation officer who prepared the pre-sentence report conceded at the hearing that this information had come primarily from the Government's file.

Despite this fact, the district court held that the Government did not breach its promise not to offer anything in aggravation. The district court relied primarily upon its authority under 18 U.S.C. § 3577[3] to consider all information concerning an individual's background, character and conduct in determining an appropriate sentence. The court concluded that the Government was without power to withhold

judge in the federal judicial system generally has wide discretion in determining what sentence to impose . . ." and "before making that determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972).

**3.** 18 U.S.C. § 3577 states:

§ 3577. Use of information for sentencing
No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

relevant information from the sentencing court and that, therefore, no breach could have occurred.

▊ Although we also entertain substantial doubt as to whether the Government could lawfully withhold relevant information from the sentencing court,[4] we do not find that issue to be dispositive in this case. Regardless of whether the Government has the authority to withhold relevant information, if it did in fact promise to do so, then Cook is nevertheless entitled to relief. *Palermo v. Warden, Green Haven State Prison,* 545 F.2d 286, 296 (2d Cir. 1976), *cert. dismissed,* 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977). A plea induced by an unfulfillable promise is no less subject to challenge than one induced by a valid promise which the Government simply fails to fulfill. *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). Thus, the crucial question is not whether the Government had the authority to carry out the promise which Cook claims he understood it to make, but whether it did in fact make such a promise.

▊ In claiming that it did not, the Government relies primarily upon the Fifth Circuit's decision in *United States v. Avery,* 621 F.2d 214 (5th Cir. 1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981). In that case, the Government had promised "that at the time of sentence they will make no recommendation and stand mute." 621 F.2d at 215. Despite that agreement, the probation officer assigned to the case followed the established practice in the district of questioning the United States Attorney who handled the case and the case agent about the defendant's character, and then included their comments in

his pre-sentence report to the court. The defendant objected to the portion of the report containing their comments, claiming that it constituted a breach of the plea agreement. The trial court overruled the objection and imposed sentence. Following an initial remand to the district court to allow it to determine whether the Government's promise to stand mute at sentencing carried an implied promise to give no information to the probation officer that would be detrimental if seen by the judge, the Fifth Circuit affirmed, stating

> ... we cannot conclude that the government violated the terms of the plea agreement by providing the probation officer with information on the defendant's background and character for presentence investigation purposes. The government only promised to make no recommendation and stand mute at the time of sentencing. We cannot construe this promise to obligate the government to withhold the disclosure of pertinent information on the defendant's background and character from the sentencing judge.

*Id.* at 216. The Government contends that the same conclusion follows here. In fact, the Government argues that its position is even stronger because, unlike *Avery,* the probation officer in this case did not speak with anyone from the United States Attorney's office concerning the case, but merely obtained the information from its file. Under those circumstances, the Government contends it should not be found to have breached the plea agreement.

The Fifth Circuit's decision in *Avery* does not support the Government's position in this case because the promises are signifi-

---

4. Rule 11(e)(1), Fed.R.Crim.P., lists the promises an attorney for the Government may make in return for a defendant's guilty plea. The withholding of relevant information from the sentencing court is not among the possibilities listed. Moreover, the very nature of the sentencing process would seem to preclude such an agreement. Information concerning an individual's actual involvement in the offense, as well as his background and character, is absolutely essential to an informed sentencing determination. If Government records and re-

ports are the only available source of that information, as they often are, the Government's withholding of them would in effect require the court to make its determination blindfolded. *See also United States v. Avery,* 589 F.2d 906, 909 (5th Cir. 1979) (Hill, J., dissenting) ("I doubt that an agreement to withhold information from the sentencing judge would be lawful."). The validity of the plea agreement itself was not briefed or argued by the parties, so we do not pass on its validity in this case.

cantly different. In *Avery*, the Government had promised only that it would make no recommendation and stand mute at the time of sentencing. Here, however, the Government promised that it would "not offer anything at all in aggravation." The Government's promise in this case is much broader than the one made in *Avery*. For us to construe that promise to apply only to the United States Attorney's oral comments to the judge at the time of sentencing would be to read into it limitations which it does not otherwise contain.[5]

Moreover, to construe the agreement in this manner would render the Government's promise practically meaningless since it would allow the Government to accomplish indirectly what it had promised not to do directly. So far as Cook was concerned, whether the sentencing judge was made aware of the damaging information through the probation officer's written report or the United States Attorney's oral comments, the result was the same. While there may be cases in which a defendant does in fact bargain for such a promise, we will not construe an agreement in this way in the absence of clear evidence that that is what the parties intended. The Government may not rely on favorable judicial construction to cure significant ambiguities in its plea agreements. *United States v. Bowler*, 585 F.2d 851 (7th Cir. 1978). Plea agreements need to be carefully drawn and understood by all parties to avoid the problem illustrated by this case.

We therefore hold that the Government breached its promise to Cook that it would offer nothing in aggravation of his sentence when it permitted the probation officer assigned to the case to obtain information of an aggravating nature from its file for use in the pre-sentence report to the court. We also hold that under the circumstances of

this case Cook should be allowed to withdraw his guilty plea and plead anew to the charges against him.

In *United States v. Bowler*, 585 F.2d at 856, we stated:

Where a plea agreement has not been honored by the Government, the fashioning of an appropriate remedy is largely a matter of the exercise of the sound discretion of the court according to the circumstances of each case. *Santobello v. New York, supra; Palermo v. Warden, Green Haven State Prison, supra.* Appropriate relief can include allowing a defendant to withdraw a guilty plea, *United States v. Hammerman*, 528 F.2d 326 (4th Cir. 1975); directing the Government to provide specific performance of a promise, *Geisser v. United States*, 513 F.2d 862 (5th Cir. 1975); or ordering the imposition of a specific sentence where withdrawal of a guilty plea or specific performance by the Government would be either meaningless or infeasible. *Correale v. United States*, 479 F.2d 944 (1st Cir. 1973).

In *Bowler*, specific performance of the Government's promise was the appropriate remedy where the defendant had not requested that he be allowed to withdraw his plea and where such performance could be achieved by resentencing in light of certain additional factors.

Here, however, Cook has specifically requested that he be allowed to withdraw his plea. And considering the nature of the plea agreement, specific performance, even before a different sentencing judge, would seem neither practical nor desirable. We therefore conclude that allowing Cook to withdraw his plea is the only appropriate remedy.

---

**5.** In support of its contention that the agreement was intended to be so limited, the Government seems to rely on the fact that it is its normal practice to allow the probation officer assigned to a case to review its file. What the Government's practice is in other cases, however, cannot serve as evidence of what the parties agreed to here where the Government specifically promised that it would "not offer anything at all in aggravation" of the defendant's sentence, and where there is no indication that the defendant knew of the Government's practice in the first place. That the Government normally allows the probation office access to its file would be relevant only if it was shown that Cook knew of that practice and did not expect it to be varied by the agreement. No such evidence was submitted here.

322

Accordingly, the judgment of the district court is reversed and the case remanded with instructions that Cook's previous guilty plea to the one count be vacated. Because the plea agreement no longer controls and jeopardy did not attach, the other counts under the indictment which were dismissed in accordance with that agreement may be reinstated by the trial court. *Cf. United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). Circuit Rule 18 shall apply.

REVERSED AND REMANDED.