**UNITED STATES of America**

v.

**Nathaniel A. DIAMOND, Defendant.**

**No. 82 Cr. 206 (DNE).**

United States District Court,
S.D. New York.

Nov. 16, 1982.

Lawrence B. Pedowitz, K. Chris Todd, Asst. U.S. Attys., New York City, for United States of America; John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, of counsel.

James A. Cohen, Associate Atty., New York City, for defendant Nathaniel Diamond; The Legal Aid Soc., of counsel.

## MEMORANDUM OPINION AND ORDER

DAVID N. EDELSTEIN, District Judge:

The government has moved for reconsideration of this court's order of October 25, 1982 (the "October 25 order") transferring Mr. Diamond's case to another United States District Judge for purposes of sentencing, and ordering the government to obtain leave of the transferee judge before submitting any sentencing memorandum.

Nathaniel Diamond ("Diamond") and three co-defendants were named in an information charging each of them with one count of wire fraud, 18 U.S.C. § 1343, and one count of conspiracy, 18 U.S.C. § 371. The defendants defrauded more than $1,300,000 from one hundred forty-four investors who purchased tantulum scrap from Mineral Resources Corporation.[1] On March 12, 1982, the information was filed and Diamond entered guilty pleas before this court. Also on March 12, 1982, the government and Diamond entered into a letter agreement (the "letter agreement"). According to the government, the letter agreement was a standard one employed by the United States Attorney's Office in this district. Affidavit of Lawrence B. Pedowitz, Sworn to November 4, 1982 at 2. The agreement provides, in pertinent part that:

> It is further understood that the sentence to be imposed upon Diamond is within the sole discretion of the sentencing judge. This Office cannot and does not make any promise or representations as to what sentence Diamond will receive, nor will we recommend any specific sentence to the sentencing judge. This Office, however, will inform the sentencing judge and the Probation Department of . . . (4) all other information in its possession relevant to sentence.

After several adjournments, sentencing for the four defendants was scheduled for October 18, 1982, at 2:30 p.m. Counsel for Diamond stated that he was first served with a copy of the memorandum at the sentencing hearing. Tr. at 29–30. The sentencing memorandum urges the court "to consider the need for both specific and general deterrence . . . [and] to consider the need for punishment." Government's Sentencing Memorandum at 8.

The first of the defendants to be sentenced, Michael A. Singer, was sentenced to a term of imprisonment of 42 months and three years probation. Defendant Diamond was the next defendant to stand before the court for sentence. The court asked Mr. Diamond and his counsel whether there was any reason why sentence should not be imposed. Both stated there was none. Tr. at 21. Following extensive addresses to the court in mitigation of sentence by Mr. Diamond and his attorney, and following a reply by the government, counsel for Diamond indicated he was "dismayed" by the statements made by the government in its sentencing memorandum "because the agreement between Mr. Diamond and the Government commits the Government to

---

1. Additionally, one of the co-defendants, Steven R. Epstein, was named in and plead guilty to two separate informations, 82 Cr. 207 and 82 Cr. 208 charging him with committing wire and mail fraud in violation of 18 U.S.C. §§ 1341–1343. In these informations, Epstein was charged with engaging in fraud schemes involving C.B. Benson Co., Inc. and E–K Capital Corp. These schemes were similar to those engaged in by the Mineral Resources defendants.

not making a specific recommendation as to sentence." Tr. 29–30.

The government unequivocally denied that the sentencing memorandum made a specific recommendation regarding sentencing. Tr. 31–32. The government further stated that they had already advised counsel that the government would consent to an adjournment of the sentencing to afford counsel an opportunity to respond to the memorandum. Tr. at 32. At that time, Diamond's counsel requested, and the court granted, a one week adjournment of the sentence as to Mr. Diamond.

On October 22, 1982, Diamond requested by letter to the court that this court transfer the case to another judge for purposes of sentencing, and order the government not to present its sentencing memorandum to the transferee judge. The stated basis for this request was that "[t]he Government by making a recommendation regarding the sentence, has breached its agreement with the defendant."

On October 25, 1982 the court heard arguments from both the government and Diamond concerning Diamond's request. The court found that there was no violation of the letter agreement. Tr. at 2. Nevertheless, the court granted Diamond's request to transfer this case to another judge for sentencing "in order to give Mr. Diamond no cause for uneasiness ..." *Id.* The court also ordered the government to obtain leave of the transferee judge before submitting any sentencing memorandum.

On November 4, 1982, the government moved for reconsideration of the October 25 order. On November 12, 1982, the court heard argument from both the government and Diamond regarding the government's motion.

The government contends that this court's October 25 ruling "has the potential to impact adversely on the administration of criminal justice in this District in two important respects." Pedowitz Affidavit at 1. The government contends first that the October 25 decision encourages "judge shopping" in that it sanctions a procedure whereby "defendants can obtain transfer of their sentences simply by claiming (but not proving) that the Government has breached these letter agreements." Pedowitz Affidavit at 6. Second, the government opposes that part of the October 25 order requiring the government to obtain leave from the transferee judge before re-submitting its memorandum. The government contends that it is entitled, and indeed guaranteed under Fed.R.Crim.P. 32(a)(1), to have an opportunity to provide sentencing judges with all facts and arguments it believes are relevant to sentencing.

In *United States v. Corsentino*, 685 F.2d 48 (2d Cir.1982) the court held that the government's opposition to the defendant's request for early parole under 18 U.S.C. § 4205(b) violated the government's oral agreement to "take no position" with respect to sentencing and remanded the case to another judge for resentencing. *Corsentino*, however, involved an oral agreement; thus there was greater potential for ambiguity as to whether the government had committed itself to refrain from recommending a specific sentence. Additionally, the agreement in *Corsentino* was to "take no position" as to sentencing. Here the government was not so limited; it merely was precluded from recommending a specific sentence, and was free to provide other information. Significantly, the *Corsentino* court expressly stated that any ambiguity as what recommendation the government could make could have been avoided "if the agreement include[d] only a commitment not to recommend a specific sentence with the prosecutor retaining the right to present facts and arguments bearing upon sentencing." 685 F.2d at 51. That is the language that the government incorporated in the letter agreement in the present case.

The government's sentencing memorandum suggesting that there is a need for "specific and general deterrence" as well as "punishment" comes within its agreement to refrain from recommending a specific sentence while retaining the right to present other relevant information. Thus, the court finds, as it did at the October 25 hearing, that Diamond's charge that the

government violated the March 12, 1982 letter agreement is without merit.[2] At the October 25 hearing the court ordered the transfer of sentencing to another judge without considering the adverse implications of the precedent of basing such an order on the unfounded uneasiness of the defendant.

This court strongly suggests that in the future the government state specifically the kind of recommendations it can make to a sentencing judge. The problem presented by the sentence in this case could have been obviated if the government had stated precisely the kind of recommendation it would be free to make to a sentencing judge. *See United States v. Cook,* 668 F.2d 317, 321 (7th Cir.1982) ("Plea agreements need to be carefully drawn and understood by all parties ...."). The government should take great pains to make clear to defendants what kind of sentencing recommendation it may make.

It is hereby ordered that the government's motion is granted. It is further ordered that this court's order of October 25, 1982 is vacated and this court will retain jurisdiction over Mr. Diamond's sentence.

SO ORDERED.

---

**2.** The court is also concerned with the manner in which Diamond presented his objection. As the government has indicated, Diamond had opportunities to raise any objections to the government's sentencing memorandum before the court was prepared to pronounce sentence. Pedowitz Affidavit at 3, 6. Diamond could have raised his objection at the outset of the sentencing hearing, *i.e.,* before any of the defendants were sentenced. Instead he elected to wait and raise such objections only after this court had pronounced sentence on one of his co-defendants. In addition, Diamond and his attorney initially indicated at the sentencing hearing that there was no reason why sentence should not be imposed. Tr. at 21. It was only later, after the government's response to Diamond's plea for mitigation, and perhaps after he had formulated some opinion as to what this court's sentence would be, that Diamond's attorney indicated that he was "dismayed" by the government's conduct. *Cf. White v. United States,* 354 F.2d 22, 23–24 (9th Cir.1965) (court properly denied defendant's motion to withdraw plea where defendant "did not make the motion until he knew the scope of the sentences the court had in mind").