UNITED STATES of America, Appellee,

v.

WILLIAMSBURG CHECK CASHING
CORP., Aaron Weiss and Herman
Lebowitz, Defendants–Appellants.

No. 1196, Docket 89–1586.

United States Court of Appeals,
Second Circuit.

Argued May 1, 1990.

Decided May 31, 1990.

Nathan Lewin, Washington, D.C. (Miller, Cassidy, Larroca & Lewin, Bradford M. Berry, of counsel), for defendants-appellants.

Julie Copeland, Brooklyn, N.Y., Asst. U.S. Atty., E.D.N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., David C. James, Asst. U.S. Atty., of counsel), for appellee.

Before LUMBARD, FEINBERG and WINTER, Circuit Judges.

FEINBERG, Circuit Judge:

Defendants Williamsburg Check Cashing Corp. (Williamsburg), Aaron Weiss and Herman Lebowitz appeal from judgments of conviction in October 1989 in the United States District Court for the Eastern District of New York, Joseph M. McLaughlin, J., after a guilty plea pursuant to a plea agreement with the government. Appellants Weiss and Lebowitz pled to three counts, and appellant Williamsburg pled guilty to one count, of failing to file currency transaction reports (CTR's) for certain transactions of more than $10,000, in violation of 31 U.S.C. §§ 5313(a) and 5322(b). The district court imposed identical sentences on Weiss and Lebowitz of three years in prison, a $500,000 fine and three

years of probation, and fined Williamsburg $100,000.

The issues in this appeal are whether the government violated the plea agreement provision that it makes "no promises or recommendations whatsoever with regard to sentencing" when case agents communicated information concerning appellants' other alleged crimes to the Probation Department, which incorporated that material into presentence reports; and, whether the case should be remanded for an explicit statement under Fed.R.Crim.P. 32(c)(3)(D) that the sentencing court disregarded disputed allegations of other crimes, or for specific findings as to these allegations. We hold that the plea agreement was not violated, but remand for further proceedings consistent with this opinion.

### Background

Weiss and Lebowitz were the equal owners of Williamsburg, a check-cashing service located in Brooklyn, N.Y., and were, respectively, its Vice–President and President. In January 1989, the government filed a forty-count indictment in the district court, charging appellants with conspiring to defraud the United States, and with failing to file CTR's in connection with 39 different check-cashing transactions of more than $10,000 each, which took place in 1984–86. From the figures alleged in the indictment, the total value of these transactions was nearly $1.3 million, and the average transaction amounted to approximately $33,220.

In February 1989, appellants entered into a plea agreement with the government, under which Weiss and Lebowitz would plead guilty to counts nine, ten and eleven of the indictment, and Williamsburg would plead guilty to count nine. These counts charged failure to file CTR's for one transaction in February 1984 of $10,775.32, and two transactions in March 1984, of $12,090 and $16,650, respectively. In return, the government agreed not to prosecute appellants for various crimes. The government also stipulated, in paragraph four of the plea agreement, that it "makes no promises or recommendations whatsoever with re-

gard to sentencing." Subsequently, appellants pled guilty before Judge Jack B. Weinstein.

The Probation Department then prepared presentence reports for Weiss and Lebowitz, which contained an extensive catalog of crimes that Weiss and Lebowitz had allegedly committed. These included fraudulently structuring transactions to avoid the need to file CTR's; using shell corporations to launder money for, among others, a person identified as a "well known money launderer for Colombian cocaine traffickers"; cashing checks with fictional payees for businesses to help them avoid taxes and skim money; laundering money by taking airline tickets bought in Nigeria and then, through various complicated maneuvers, obtaining refunds under fictitious names in the United States; and, fraudulently enrolling in the Comprehensive Employment and Training Act program. We will refer to these alleged crimes collectively as the "other frauds."

In April 1989, a week before the scheduled date for sentencing, the government sent a letter to Judge Weinstein, discussing the details of additional money laundering and tax fraud that Weiss and Lebowitz had allegedly committed after Williamsburg had been closed, and asking that the judge impose a sentence of incarceration as well as a fine. Appellants' letter in reply claimed that the government's request for a jail term and a fine violated its promise in paragraph four of the plea agreement not to make any recommendations with regard to sentencing.

After two hearings on the matter, Judge Weinstein in June 1989 ruled, among other things, that the government could not take any position with respect to appellants' sentence. He also ordered the Probation Department to prepare new presentence reports, and barred the Assistant United States Attorney—but not case agents—from communicating any information to the Probation Department. Judge Weinstein also recused himself, ordering the case to be transferred for sentencing to another judge.

The case was reassigned to Judge McLaughlin, and new presentence reports were prepared. Appellants then asked Judge McLaughlin to disregard all information relating to the other frauds contained in the new presentence reports. Appellants argued that the same information about the other frauds that had been included in the first set of presentence reports was realleged in the new reports, and that Judge Weinstein had erred in allowing the case agents "to provide information relating to uncharged alleged misconduct after the Court had implicitly held that the 'Government' bargained away its 'own' right to provide this type of information." The sentencing proceeding took place before Judge McLaughlin in October 1989. During it, the judge denied appellants' motion to disregard the new presentence reports, and asked appellants if they had any objection to the material in those reports. Appellants indicated that they did object to the allegations "relating to other activities," and the following colloquy between appellants' counsel (Mr. Kimmelman) and the judge ensued:

> THE COURT: Can you tell me what these other things are? I did not come away with the impression I was reading about extraneous criminal activities. I thought they were all interrelated to the charge here.
>
> MR. KIMMELMAN: They are not. I am obviously very tempted not to say anything at all. Educating in this instance is really not what I intend, your Honor. These defendants pursuant to the plea agreement were given immunity based on allegations that are contained in this that do not relate at all to the indictment and the specific charges which are failure to file currency transaction reports. Now again, I hesitate to—
>
> THE COURT: I must be incredibly obtuse because I never noticed it and I can represent to you in all candor and good faith that I regard this as a check currency transaction scheme.
>
> MR. KIMMELMAN: Then I could have saved ourselves a lot of motion papers as well.

After hearing defense counsel's plea for a sentence of probation and community service, the judge noted that

> the three counts of the indictment to which the defendants pleaded charge serious offenses. They are felonies and the amounts of money involved here are enormous. I therefore cannot accept the notion that probation and community service are appropriate.

The court then imposed the sentences described above. This appeal followed.

## Discussion

Appellants raise three arguments on appeal. They contend that the prejudicial allegations in the new presentence reports concerning the other frauds violated the plea agreement; that the judge did not comply with Fed.R.Crim.P. 32(c)(3)(D); and, that the government failed to prove the prejudicial allegations in the presentence reports. As will be seen more fully below, we hold that the plea agreement was not violated, but we are persuaded that the case should be remanded for an explicit statement or findings under Rule 32(c)(3)(D). In light of this result, appellants' third claim is denied without prejudice to renewal in the district court.

### 1. *Violation of the Plea Agreement*

Appellants assert that, under cases such as *United States v. Casamento*, 887 F.2d 1141, 1180–82 (2d Cir.1989), cert. denied, — U.S. ——, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990), and *United States v. Corsentino*, 685 F.2d 48, 51 (2d Cir.1982), comments designed to increase a defendant's sentence violate the government's promise to make no recommendation as to sentence. They contend that the "clear purpose and effect" of the government's disclosures of the other frauds in the presentence reports was to increase the severity of appellants' sentences, and that this violated the plea agreement. Citing *United States v. Cook*, 668 F.2d 317, 321 (7th Cir.1982), appellants also assert that the Seventh Circuit has interpreted a similar agreement to preclude the government from disclosing its files to the Probation Department.

**28**

■ We are not persuaded by these arguments. We will assume arguendo that the phrase, "makes no promises or recommendations whatsoever with regard to sentencing," means that the government *will* make no such recommendations in the future, even though that meaning does not necessarily flow from the awkward language used.[1] Nevertheless, the plea agreement cannot be interpreted to preclude all government sources, including case agents, from providing the Probation Department with factual information regarding appellants. To read the agreement as appellants suggest would require the judge to sentence in the dark. Such an agreement to keep the judge ignorant of pertinent information cannot be enforceable, because a sentencing court "must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." *Wasman v. United States*, 468 U.S. 559, 563, 104 S.Ct. 3217, 3220, 82 L.Ed.2d 424 (1984); see also *United States v. Lee*, 818 F.2d 1052, 1055 (2d Cir.) (sentencing court "is required to assure itself that the information upon which it relies when fixing sentence is reliable and accurate"), cert. denied, 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987). Thus, where the government agrees to make no recommendation as to sentence, we hold that it may still provide the Probation Department with any factual material relevant to sentencing, which of course includes what it may know of appellants' other activities.

The cases that appellants cite do not require a contrary result. In both *Casamento* and *Corsentino*, the prosecutor submitted a sentencing memorandum directly to the district court detailing the defendant's crimes and their significance. See *Casamento*, 887 F.2d at 1180–81; *Corsentino*, 685 F.2d at 49. In addition, the prosecutor in *Corsentino* went further, and, in response to a question from the judge, made a statement on the record opposing imposition of a sentence pursuant to a stat-ute that would have allowed the defendant to become eligible for parole more quickly. 685 F.2d at 49. By contrast, after this case was assigned to Judge McLaughlin, the Assistant United States Attorney did not take the affirmative step of submitting directly to the district court material about the crimes to which appellants had pled guilty or about the other frauds. Also, the new presentence reports were prepared without any contact or information from the prosecutor, although the case agents were free to speak to the Probation Department, which in turn, incorporated the case agents' information into the presentence reports.

■ *Cook* is also distinguishable. First, the *Cook* panel did not find the question whether the government "could lawfully withhold relevant information from the sentencing court" to be "dispositive," 668 F.2d at 320 (footnote omitted), and indeed, entertained "substantial doubt" that such a plea agreement would be valid. *Id.* & n. 4. Instead, the court focused on whether the government did in fact make such a promise, and concluded that it did. *Id.* at 320–21. Since defendant there had "specifically requested that he be allowed to withdraw his plea," *id.* at 321, the court granted that relief. In this case, however, appellants were offered that opportunity by Judge Weinstein but declined, arguing that the government should be required to abide by the agreement as appellants construed it. In other words, appellants argued that the district judge had to sentence them without knowing all of the arguably relevant facts. As already indicated, we would not enforce such an agreement because it would be against public policy. Second, the plea agreement in *Cook* was somewhat different from the one we face because it provided that the government would " 'not offer anything at all *in aggravation.*' " *Id.* at 318 (emphasis added). The *Cook* panel characterized such an undertaking as "significantly different" and "much broader" than, for example, the government's agree-

---

**1.** For example, the ambiguous language of "no promises" could be construed to mean that the government did *not* promise to refrain from a sentencing recommendation at the sentencing proceeding.

ment to "'make no recommendation [at sentencing] and stand mute.'" *Id.* at 320–21 (quoting *United States v. Avery,* 621 F.2d 214, 215 (5th Cir.1980), cert. denied, 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981)).

### 2. *Fed.R.Crim.P. 32(c)(3)(D)*

■ Fed.R.Crim.P. 32(c)(3)(D) provides, in pertinent part, that if "comments of the defendant ... allege any factual inaccuracy" in the presentence report, then the sentencing judge must, "as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." Appellants contend that the judge's statements regarding the disputed allegations—i.e., "I thought they were all interrelated to the charge here" and "I can represent to you in all candor and good faith that I regard this as a check currency transaction scheme"—were insufficient to comply with Rule 32(c)(3)(D).

We agree. It is true that the record implies that when the judge imposed sentence, he was considering only the counts of the indictment to which appellants had pled guilty, and that appellants' counsel understood this at the time. However, Rule 32(c)(3)(D) "is designed to insure maximum clarity, on the record, of the sentencing judge's treatment of any disputed matters in the presentence report." *United States v. Ursillo,* 786 F.2d 66, 71 (2d Cir. 1986). Accordingly, our decisions have taken a strict view of the requirements of this portion of Rule 32. See, e.g., *Dunston v. United States,* 878 F.2d 648, 650 (2d Cir. 1989) (per curiam); *United States v. Bradley,* 812 F.2d 774, 782 (2d Cir.), cert. denied, 484 U.S. 832, 108 S.Ct. 107, 98 L.Ed.2d 67 (1987); and *Ursillo,* 786 F.2d at 71. We cannot say that the judge's statements make plain that he was disregarding the allegations of the other frauds in the presentence report.

Furthermore, the presentence reports follow appellants into prison, and because they were convicted under pre-Guidelines

2. Appellants' pending motion for bail is denied.

law, may affect their eligibility for parole. See *Dunston,* 878 F.2d at 650. It is thus particularly important that the judge make clear whether he was relying on the allegations of the other frauds, or whether he chose to ignore them.

The government argues, however, that appellants' counsel did not challenge any specific allegations in the presentence reports and must be held to that choice, and that the judge explicitly based his sentence solely on the currency violations and not the other frauds. As already indicated, we do not believe that the record before us is as clear as the government suggests. On this transcript, and in light of "the mandatory character" of Rule 32(c)(3)(D), *Bradley,* 812 F.2d at 782, we cannot accept the government's claim.

Thus, we remand to Judge McLaughlin for an explicit statement under Rule 32(c)(3)(D). On remand, he should either state explicitly that he did not rely on the disputed allegations in sentencing appellants or make findings as to those allegations. In view of at least the possibility that this might change the basis upon which the sentence was imposed, Judge McLaughlin is free to reaffirm the sentences or to impose different sentences.

In view of this disposition, appellants' third argument (that the government failed to prove the prejudicial allegations in the presentence reports) is denied without prejudice to renewal in the district court.

The case is remanded for further proceedings consistent with this opinion.[2]