The Miller Group also argues that B.C.R. is not entitled to recover on its mechanics

lien because it failed to plead and prove that it was a licensed contractor as required by N.M.Stat.Ann. § 60–13–30 (1978). However, there is no indication in the record that the Miller Group raised this precise issue to the district court. Under these circumstances, the Miller Group is precluded from arguing the issue on appeal. *See, e.g., Baker v. Penn Mut. Life Ins. Co.*, 788 F.2d 650, 663 (10th Cir.1986).

Accordingly, the judgment of the United States District Court for the District of New Mexico is AFFIRMED.

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles Joseph JIMENEZ,**
**Defendant–Appellant.**

**No. 90–1114.**

United States Court of Appeals,
Tenth Circuit.

March 19, 1991.

---

Colo., for defendant-appellant Charles Joseph Jimenez.

John M. Hutchins, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty. and Bernard E. Hobson, Asst. U.S. Atty., with him on the brief), Denver, Colo., for plaintiff-appellee U.S.

Before ANDERSON and EBEL, Circuit Judges, and SAFFELS, District Judge *.

SAFFELS, District Judge.

This appeal arises from a sentence entered by the district court following the defendant's guilty plea on two conspiracy counts enumerated in his Indictment, Count 1 charging a violation of 21 U.S.C. § 846, conspiracy to distribute cocaine; and Count 2 charging a conspiracy to defraud the United States of its lawful taxes in violation of 18 U.S.C. § 371. In this appeal, defendant-appellant, Charles Joseph Jimenez, raises four contentions of error: (1) that he was denied effective assistance of counsel at sentencing because his trial counsel had an actual conflict of interest; (2) that the government attorney's actions immediately prior to sentencing and statements made during the sentencing proceeding constituted a violation of the parties' plea agreement; (3) that his sentence was disproportionate; and (4) that the use of the estimated amount of cocaine distributed in the conspiracy in the presentence report to determine his offense severity rating violated his due process rights. We affirm.

## I.

On December 5, 1989, Charles Joseph Jimenez, the defendant/appellant herein, along with four other individuals, was named in an indictment charging multiple counts of conspiracy to distribute cocaine, conspiracy to defraud the United States of taxes, and various Interstate Travel Act counts. On March 5, 1990, defendant entered a plea of guilty to Counts 1 and 2 of the Indictment, charging conspiracy to dis-

Charles Szekely, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender with him on the brief), Denver,

* The Honorable Dale E. Saffels, Senior United States District Judge for the District of Kansas, sitting by designation.

tribute cocaine and conspiracy to defraud the United States out of lawfully owed tax money, respectively. On April 9, 1990, defendant was sentenced by the Honorable Zita Weinshienk, United States District Judge for the District of Colorado, to imprisonment for a term of 20 years as to the first count of the Indictment and imprisonment for 5 years as to the second count of the Indictment, to run concurrently with each other, but consecutive to an 8-year sentence the defendant was currently serving which was previously imposed by the United States District Court for the District of Wisconsin.

The present Indictment arose out of a lengthy investigation of motorcycle gang activity in Denver, Colorado, and the distribution of controlled substances. Upon the government's motion to disclose copies of transcripts of grand jury testimony, on January 4, 1990, the district court entered an order that copies of the transcripts of testimony given before the grand jury be disclosed to attorneys for the defendants for trial preparation. The order further stated "that the disclosed copies of the Grand Jury transcripts and materials are not to be reproduced and are to be retained in the personal custody or offices of the attorneys for the Defendants." A Denver attorney, Robert A. Flynn, was appointed to represent the defendant on January 18, 1990.

On February 28, 1990, a plea agreement was reached. In exchange for Jimenez's plea of guilty to Counts 1 and 2 of the Indictment, the government agreed to dismiss the other pending charges of the Indictment and not to file any additional charges based on criminal activities then known by the government. The letter embodying the plea agreement also referred to an Exhibit "A," in which the government agreed to recommend that defendant's sentences as to both counts be served concurrently with each other and with the defendant's current federal sentence. The government further agreed that "the Government would recommend no more

than a 7 year maximum [sentence] as to this defendant." Pursuant to this agreement, defendant entered his plea of guilty on March 5, 1990. The district court then ordered a presentence investigation and set the matter for sentencing on April 9, 1990.

Between the entry of the plea of guilty and the sentencing date, the government's attorney, by letter dated April 3, 1990, furnished a report to the probation officer doing the presentence report. The government's report stated that certain excerpts of grand jury testimony given by a cooperating witness (*i.e.*, Paul M. Ensmenger) had appeared posted to the wall of a "biker bar" in Florida. The excerpt was contained in the materials covered by the court's order of disclosure of grand jury materials. Although no harm came to the witness, government agents were very concerned about this disclosure. The report alleged that "Jimenez may be involved" in disseminating grand jury materials and in witness intimidation and stated that the disclosure incident should be brought to the attention of the court.

When Jimenez appeared for sentencing on April 9, 1990, a discussion occurred with the court concerning the disclosure of grand jury materials. After counsel stated their respective appearances, the district court judge read into the record the text of the court's January 4, 1990, order concerning disclosure of grand jury materials. The following colloquy occurred:

THE COURT: Now I understand from reading this case that that order was not followed; and I'd like to know precisely why Mr. Jiminez[1] was given a copy of the grand jury transcript and why he was permitted to mail a copy to another state. That copy very clearly by order was to remain in the custody of the attorney only, not Defendant, and to be returned. Mr. Flynn?

MR. FLYNN: Your Honor, no copies were made in my office of the transcripts. The transcripts were loaned to the defendant for the simple reason that he was detained—

---

**1.** Although the district court transcript and many of the court documents spell defendant's name "Jiminez," the proper spelling of defendant's name is, in fact, "Jimenez."

THE COURT: Why were they even shown to the defendant? This order says they're to be disclosed to the attorneys only, not defendants.

MR. FLYNN: My understanding of the disclosure, your Honor, was that they could be used for preparation of the defense.

(R.Vol. III., 3).

. . . . .

THE COURT: How did he [the defendant] get a copy of it, Mr. Flynn?

MR. FLYNN: It was provided to him by me, your Honor.

THE COURT: You mailed it to him?

MR. FLYNN: I delivered it to the FCI.

THE COURT: The original?

MR. FLYNN: The original, with the understanding that it would be reviewed and returned to me.

THE COURT: And you did that after reading this order.

MR. FLYNN: Your Honor, this order was entered before I came into the case. I must say that I never specifically saw the order. I am aware of the rules in this district, and I take full responsibility for it.

(R. Vol. III, 4).

. . . . .

MR. FLYNN: Now the defendant is going to speak to your Honor directly about this; and he is going to apologize for what has occurred, as I do for my not making it clearer that under no circumstances could it be reproduced and sent out. Perhaps much of that blame should be laid on me. And I think at the same time, the defendant should have been aware not to do that, but, you know, communications go back and forth out of the FCI, and I'm merely saying that it was no secret what the status of Mr. Ensminger was or has been for some time.

(R.Vol. III, 15).

. . . . .

As the sentencing hearing continued, the government attorney made the following remarks:

MR. HOBSON: Very well, Judge. Let me say to start off with, I will acknowledge the fact that we recommended 7 years and a concurrent sentence at the time of the plea and that we will stand by that recommendation if for no other reason than as a matter of honor. However, Judge, we feel like we have pointed out to the Court some factors that certainly we suggest bear consideration; and as the Court has already noted, we note that these were recommendations; and while I'm not trying to go behind the plea agreement, certainly, or I would simply say that we no longer recommend 7 years, we do acknowledge that it's up to this court, as the Court has already very well made us aware.

Your Honor, quite frankly, if I thought I could prove or file or sustain an intimidation charge against this defendant, I would have filed it and very gladly. While I feel that that has occurred in this case, unfortunately, I don't feel that I can file a case based on what I know certainly at this point. I very much would have liked to. That doesn't mean it didn't happen, however, Judge....

I also want to point out that to suggest that someone with this defendant's background—and I'm anticipating what he's going to say here to a certain extent—is naive enough to think it harmless to pass this kind of material along and quite frankly to in effect see that it's disseminated—I think that that's unreasonable. I don't know what Mr. Jiminez is going to say. I'm going to be curious to hear it myself.

And I agree with Mr. Flynn that the information has been out there certainly ever since the raids were conducted back in 1988; and indeed, perhaps as far back as 1987, many defendants have known that we were coming, so to speak. But I don't think it's unreasonable, Judge, to fear the printed page mailed to the biker bar door more than the spoken word about who is cooperating, who is flipping, who is doing what. And I just find this whole episode very disturbing, and I think obviously so does the Court. And I

just ask that it be considered. And that's really all I have to say, Judge. (R.Vol. III, 18–20).

With regard to the dissemination incident, defendant Jimenez made the following statements to the sentencing court:

THE DEFENDANT: In regards to Mr. Ensminger, Gonzo Salvador asked for materials about Mr. Ensminger, which I sent him. At the time, I didn't realize it was wrong for me to send these materials to him, not knowing that there was a rule that they couldn't be copied or even viewed by myself without the attorney being present. And, you know, for that matter, I want to apologize to the Court for my ignorance about that and my complete stupidity in sending those materials out and in turn Mr. Salvador passing them on to the others.

And since 1987, I have been investigated several places, and many people have testified against me. I've never harassed, intimidated, threatened, or even attempted to contact anybody who has ever testified against me. I have no history of violence whatsoever.... and your Honor, I again want to apologize to the Court for this whole incident with this paper work and Salvador and Ensminger.

(R.Vol. III, 20–21).

The district court then stated defendant's sentence as follows:

THE COURT: This court has considered—you can just say right there—considered very carefully all of the facts and circumstances of this case, including the mailing out of the grand jury transcript. Mr. Jiminez, I don't think that you're so naive, based upon your prior record, that you did not understand the seriousness of sending out that grand jury transcript. This is your fifth felony conviction. And even if we exclude that one that took place when you were 20 years old, this is your fourth. Of those, two of them involved guns and two involved drugs....

My main concern in sentencing you is to protect the public and to punish and to deter others.

I would note—and I asked the probation officer that if this were to have happened under the guidelines, what would have been the sentence. And as close as the probation department could tell me, the sentence under the guidelines would have been up to 108 months, or 9 years.

I have considered and given lots of thought to the Government's recommendation of 7 years. After considering it, I will not follow that recommendation.

... and the Court will at this time order that you be sentenced on Count I to 20 years in Federal prison, and on Count II, to 5 years in Federal prison. These counts shall be concurrent with each other but consecutive to the count which you are presently serving....

I hope you'll use the time in prison to your benefit; and I would inform you that by law, you must serve one-third of that time that I have imposed, which means 6—a little over 6½ years. That comes out to be less time served actually than if I were to have given you 108 months, which is 9 years, which it would have been under the guidelines....

(R.Vol. III, 22–23).

## II.

■ In his first issue on appeal, defendant-appellant Jimenez contends that he was denied effective assistance of counsel at his sentencing because his counsel, Mr. Flynn, had an actual conflict of interest due to Flynn's potential criminal contempt liability for his role in the dissemination of the grand jury material, which incident, defendant contends, played a major role in the determination of his sentence. In reviewing defendant's ineffective assistance of counsel claim, this court is guided by the historical facts found by the district court unless those facts are found to be clearly erroneous; the court's review of the ultimate legal issue is, however, plenary. *United States v. Miller*, 907 F.2d 994, 996 (10th Cir.1990).

Generally, in order for a defendant to succeed on an ineffective assistance of counsel claim, a defendant must show that

defense counsel's performance was deficient and that the deficient performance prejudiced the defense. *United States v. Rivera,* 900 F.2d 1462, 1472 (10th Cir.1990) (citing *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984)). When a defendant shows "that a conflict of interest actually affected the adequacy of his representation [he] need not demonstrate prejudice in order to obtain relief." *Osborn v. Schillinger,* 861 F.2d 612, 626 (10th Cir.1988) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980)). "When an actual conflict is demonstrated, prejudice is presumed because 'counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties.'" *Osborn,* 861 F.2d at 626 (quoting *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067). As stated by the United States Supreme Court in *Strickland* "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" 466 U.S. at 692, 104 S.Ct. at 2067 (quoting *Cuyler,* 446 U.S. at 350, 348, 100 S.Ct. at 1719, 1718).

Defendant argues that his attorney, Mr. Flynn, was placed in a situation of actual conflict of interest during the sentencing proceeding because of the grand jury material dissemination incident. Defendant argues that at the time the sentencing began, the district court judge knew that Mr. Flynn had violated the January 4, 1990, order because the grand jury transcript had left the "personal custody or offices" of the defense attorney; thus, defendant argues Mr. Flynn was potentially subject to criminal contempt for his actions. Further, either Mr. Flynn, or defendant Jimenez, further disseminated the transcripts out of the state of Colorado where they eventually ended up posted to the wall of a "biker bar" in Florida. Thus, defendant argues that his counsel, Mr. Flynn, was forced to defend his own actions in connection with the dissemination of this material before a concerned district judge. Defendant further argues that Mr. Flynn's statements to the judge with regard to the incident constituted testimony by defense counsel against his client which was used in determining the sentence imposed, which, defendant argues, was 20 years in excess of the recommendation made by the government in the plea agreement.

On this record, however, the court finds that defendant has not demonstrated the existence of an actual conflict of interest in this case. Upon the district judge's questioning, defense counsel acknowledged that he had provided the grand jury materials to the defendant and, although he stated that he expected the original of the materials to be returned to him, he apologized for not making it clearer to the defendant that the materials should not be copied under any circumstances. Further, although Mr. Flynn stated that he thought the defendant should have been aware not to disseminate the material, defense counsel took "much of the blame" upon himself. For his part, defendant admitted to sending out the grand jury materials but stated that he did not know his actions were improper. In closing, Mr. Flynn stated:

> Now, therefore, I, as counsel from Mr. Jimenez, take responsibility for not pounding home the point that you just don't reproduce this material and that you just don't put it in the mail. And I apologize to the Court for my failure to communicate clearly the Court's order, and I'm responsible for the knowledge of the Court's order and counseling the client on that....

(R.Vol. III, 16).

Under the circumstances as they appear on the record, the court does not find that an actual conflict of interest was created in this situation between defendant Jimenez and his attorney Mr. Flynn since their explanations essentially dovetailed; their interests were not inconsistent since both had an incentive to minimize the situation concerning the disclosure. *Cf. Government of Virgin Islands v. Zepp,* 748 F.2d 125, 135–36 (3d Cir.1984) (conflicting interests arise out of·personal interests of counsel that are "inconsistent, diverse or otherwise discordant," or where defendant's interests "diverge with respect to a material

factual or legal issue or to a course of action"). Further, defense counsel apologized to the court and took a "large share of the blame" for defendant's actions, saying that he had not explained it well enough to the defendant (who denied knowing that the mailing· was improper). Because defendant has not demonstrated the existence of an actual conflict, the court finds that defendant's request for a remand for resentencing based upon ineffective assistance of counsel should be denied.

### III.

■ Defendant's second argument on appeal is that the government attorney's actions immediately prior to sentencing and statements made during the sentencing proceeding so undercut its recommendation as to constitute a violation of the plea agreement entered into by the parties. Defendant contends that, although the government attorney literally complied with the plea agreement in recommending the agreed upon seven-year sentence, the government effectively violated the plea agreement by furnishing the information about the grand jury material disclosure incident to the sentencing court through the probation office and by commenting during sentencing about the defendant's disclosure of grand jury materials. Whether government conduct violates a plea agreement is a question of law subject to *de novo* review. *United States v. Shorteeth*, 887 F.2d 253, 256 (10th Cir.1989) (citation omitted).

■ As stated in *Shorteeth*, this court will not condone "the Government accomplishing through indirect means what it promised not to do directly." 887 F.2d at 256 (quoting *United States v. Stemm*, 847 F.2d 636, 638 (10th Cir.1988)). It is also true, however, that the plea agreement should be construed according to what Jimenez reasonably understood when he entered his plea. *United States v. Hand*, 913 F.2d 854, 856 (10th Cir.1990). Because the plea agreement in this case cannot be reasonably interpreted as prohibiting the government from informing the sentencing court of relevant conduct of this nature

(which came to the government's attention after the parties' plea agreement was reached), the government's actions did not violate the plea agreement.

■ Specifically, we find that the first action challenged by defendant as a violation of the plea agreement, *i.e.,* sending information to the United States Probation Office about the grand jury materials disclosure incident, does not constitute a violation of the plea agreement in this case. It is clear that the fact that a plea agreement has been entered into between the government and a defendant cannot alone prohibit the government from bringing relevant information to the attention of the trial judge at the time of sentencing. *See Hand*, 913 F.2d at 856–57. In fact, the prosecutor has an ethical duty to disclose such information which, in this case, postdated the parties' plea agreement. *Shorteeth*, 887 F.2d at 256; ABA Standards Relating to the Administration of Criminal Justice § 3–6.2 (1987). As the court cogently stated the matter in *United States v. Williamsburg Check Cashing Corp.*, 905 F.2d 25, 28 (2d Cir.1990):

> Nevertheless, the plea agreement cannot be interpreted to preclude all government sources, including case agents, from providing the Probation Department with factual information regarding appellants. To read the agreement as appellants suggest would require the judge to sentence in the dark. Such an agreement to keep the judge ignorant of pertinent information cannot be enforceable, because a sentencing court "must be permitted to consider any and all information that might reasonably bear on the proper sentence for the particular defendant, given the crime committed."
> ... Thus, where the government agrees to make no recommendation as to sentence, we hold that it may still provide the Probation Department with any factual material relevant to sentencing, which of course includes what it may know of appellant's other activities.

Thus, the court declines to hold that the government's actions in informing the sentencing judge, via the probation depart-

ment, of the grand jury disclosure incident violated defendant's plea agreement.

■ Further, on this record, the court cannot find that the government attorney's comments during the sentencing proceeding violated the plea agreement. First, defendant concedes that the government attorney stood by the literal terms of the plea agreement in the sentencing recommendation: *i.e.*, seven years, to run concurrently with defendant's eight-year sentence from another court. The district judge also clearly recognized that, despite the other comments made by the government with regard to the grand jury matter, the government was recommending a seven-year sentence, stating: "I have considered and given lots of thought to the Government's recommendation of 7 years. After considering it I will not follow that recommendation." (R.Vol. III, 23). Second, the court finds that the government attorney's comments can, in the main, be viewed as informing the court about the grand jury incident. As stated above, informing the sentencing court of pertinent information cannot generally be considered a breach of a plea agreement. *Williamsburg Check Cashing Corp.,* 905 F.2d at 28. *Cf., Shorteeth,* 887 F.2d at 256–57 (holding that § 1B1.8 of the guidelines expressly prohibits the use of self-incriminating information gained from a cooperating defendant unless authorized by the plea agreement).

Third, although the government attorney undeniably demonstrated a clear lack of enthusiasm for the recommended sentence, an unenthusiastic recommendation is still a recommendation. *Hand,* 913 F.2d at 857. On this record, the court does not find that the government "accomplished by indirect means what it promised not to do directly," *Shorteeth,* 887 F.2d at 256; thus, the court does not find that the government violated its plea agreement with defendant. Therefore, defendant's request that his sentence be vacated and the case remanded to the district court to allow the defendant to withdraw his plea or, in the alternative, defendant's request that he be resentenced before a different judge, will be denied.

## IV.

■ Defendant also argues that the sentence imposed violates the eighth amendment's constitutional requirement of proportionality. Defendant was sentenced to 20 years, to run consecutive to the federal sentence he was currently serving. Defendant contends that the 20–year sentence was disproportionate to the sentences of the other codefendants, including the so-called kingpin, George Edward Schultz, a/k/a "Pork," who received a 5–year sentence. Defendant also argues that his sentence exceeded the national and the district of Colorado average sentences for similar offenses. With respect to defendant's eighth amendment claim, the district court's sentencing decision is reviewed under an abuse of discretion standard. *See United States v. Hughes,* 901 F.2d 830, 832–33 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 163, 112 L.Ed.2d 128 (1990). Further, the sentencing court's decision is entitled to substantial deference on review. *United States v. Berryhill,* 880 F.2d 275, 277 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 853, 107 L.Ed.2d 846 (1990).

A sentence imposed within the prescribed statutory limits generally will not be found to be cruel and unusual. *See United States v. Newsome,* 898 F.2d 119, 122 (10th Cir.1990). Defendant's 20–year sentence was within the prescribed statutory limits. In imposing this sentence, the sentencing judge considered the serious nature of the charged offense, defendant's four prior felonies and the defendant's actions in disseminating the grand jury materials. Given these factors, which are relevant to, and permissible factors in, a sentencing determination, the court finds that the general statistics offered by defendant in support of his disproportionality claim do not indicate that the sentencing judge abused her discretion. *See United States v. Gourley,* 835 F.2d 249, 253 (10th Cir.1987), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988) (stating that the circumstances of the offense may be considered and that a defendant's prior record may be used in deriving an appropriate particularized sentence). The court further finds that defendant has not demonstrated that the disparity of defendant's sentence *vis-a-*

*vis* his codefendant Schultz constituted an abuse of discretion in this case. *See United States v. Endicott,* 803 F.2d 506, 510 (9th Cir.1986). Thus, the court finds that defendant's request that his sentence be set aside and that the case be remanded for resentencing should be denied.

### V.

 Defendant's final argument in this appeal is that he was denied due process of law when the probation officer determined and stated in his report that the offense severity rating would be assessed as Category 7 due to the estimated amount of cocaine that was alleged to have been distributed under the conspiracy. Defendant contends that the determination of the amount of cocaine distributed in the conspiracy should have been made pursuant to a hearing and should have been made based upon testimony submitted under oath and subject to cross-examination.

The court finds that defendant's due process argument with regard to estimating the amount of cocaine involved in the conspiracy is without merit for several reasons. This was a pre-guidelines sentencing. (R.Vol. III, 23). Pursuant to the sentencing court's request, however, the probation officer determined what defendant's sentence would have been had application of the guidelines been mandatory in his case. *Id.* There is no requirement that sentencing evidence comply with the Federal Rules of Evidence. *See United States v. Beaulieu,* 893 F.2d 1177, 1179 (10th Cir. 1990) (citing Fed.R.Evid. 1101(d)(3)). Further, "courts have traditionally been allowed to consider all sources of information in formulating an appropriate sentence." *Id.* Even under the guidelines, the amount of drugs upon which one is sentenced is not limited to the amount to which a defendant enters a plea of guilty or to the amount contained in a count upon which one is convicted. *See, e.g., United States v. Trujillo,* 906 F.2d 1456, 1465–68 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 396, 112 L.Ed.2d 405 (1990). Thus, the court finds that defendant's due process argument is without merit.

 Although appellant Jimenez only indirectly raises this issue, upon review of the record we have concluded that a remand to the district court is required in this case for the following reasons. At the sentencing hearing, defendant's counsel objected to the quantity of cocaine stated in the presentence investigation report. (R.Vol. III, 11–13). Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure provides that if the factual accuracy of a presentence report is challenged by a defendant or his counsel, the district court must either make a finding as to the allegation or make a determination that no such finding is necessary as the controverted matter will not be taken into account by the sentencing court. Because the district court did not make a finding on the record concerning the disputed facts or state that it was not relying upon these facts in sentencing, as required by Rule 32(c)(3)(D), and did not attach its findings and determinations to the presentence investigation report as required by the rule, we conclude that this case must be remanded for resentencing. *See, e.g., United States v. Alvarado,* 909 F.2d 1443, 1444–45 (10th Cir. 1990).

We therefore VACATE defendant's sentence and REMAND for the purpose of resentencing Mr. Jimenez, as required by Rule 32; in all other respects, however, the district court is AFFIRMED.