**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas George TRAYNOFF,
Jr., Defendant–Appellant.**

No. 94–1874.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1995.

Decided April 5, 1995.

Gillum Ferguson, Asst. U.S. Atty., Crim. Div. (argued), Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, App. Div., Chicago, IL, for U.S.

Daniel G. Martin, Federal Public Defender, Office of Federal Defender Program, Chicago, IL, for Thomas G. Traynoff, Jr.

Before FLAUM and EASTERBROOK, Circuit Judges, and PAINE, District Judge.*

FLAUM, Circuit Judge.

Thomas Traynoff was indicted in 1987 for possessing a firearm as a convicted felon in violation of 18 U.S.C. § 1202(a)(1). He pleaded guilty and the district court sentenced him to five years probation on July 9, 1987. The conditions of Traynoff's probation required him to refrain from committing any state or federal felony.

Traynoff was subsequently indicted in Kane County, Illinois, for state felonies including aggravated criminal sexual assault, criminal sexual assault, unlawful possession of firearm ammunition by a felon, and unlawful possession of ammunition without a state firearms owners' identification card. The United States filed a Motion for a Rule to Show Cause why his probation should not be revoked ("Rule to Show Cause") based on Traynoff's alleged violations of the conditions of his probation. On November 4, 1993, Assistant United States Attorney ("AUSA") Patrick King appeared at a status hearing on behalf of the United States and in place of another AUSA, Gillum Ferguson, the prosecutor assigned to Traynoff's case. The court reset the cause for another status hearing on November 18, 1993, at which AUSA King

again appeared. At that hearing the following colloquy took place:

> MR. KING: Patrick King appearing on behalf of Mr. Ferguson for the United States.
>
> MR. MARTIN: Good morning, Your Honor, Daniel Martin, Federal Defender Program, on behalf of Thomas Traynoff.
>
> MR. KING: Your Honor, this matter was supposed to be resolved in state court yesterday. We attempted to confirm with either the clerk of the court or the prosecuting lawyers whether the case is in fact going to be disposed of by sentencing the defendant. The computer records are not completely accurate and I expect that we can get an answer by noon.
>
> If he is in fact sentenced to the twelve year sentence as everyone believes he would be in state court, I would be recommending that we would dismiss the action here, and if that were the case I'd suggest we could just submit an agreed order to the Court this afternoon.
>
> THE COURT: Sounds fine to me.
>
> MR. KING: Thank you.
>
> MR. MARTIN: Very well, Judge.

AUSA King later verified that Traynoff had received a twelve year state sentence, and on Monday, November 22, 1993, the parties submitted to the district court an agreed order dismissing the Rule to Show Cause.

On December 10, 1993, AUSA Ferguson requested a status hearing on the matter, noting that the court had never entered an order dismissing the case. Traynoff moved to dismiss, arguing that the court lacked jurisdiction over the Rule to Show Cause because it had been previously dismissed. Traynoff also argued that the government's obligation under the terms of the November 18, 1993, agreement estopped it from litigating the issue.

On January 5, 1994, the district court denied Traynoff's request to dismiss for lack of jurisdiction, stating that it had not previously entered the order dismissing the case be-

* The Honorable James C. Paine, of the United States District Court for the Southern District of Florida, sitting by designation.

cause it "was stuck in a sheaf of papers relevant to another case. So the reason it was not signed was clerical oversight." The court concluded that it had jurisdiction over the matter because "[i]t is after all, the judgment, the final piece of paper, the actual order that gets enforced and nothing else."

In response to Traynoff's estoppel argument, the district court held that this agreement was not analogous to a plea agreement, which can bind the government. The court stated that "the manner in which this [agreed motion to dismiss] occurred, the speed with which it occurred, the absence of any explicit procedure to validate it prevents [the court] from treating it as [the court] would a plea agreement." Accordingly, on April 6, 1994, the court granted the United States' motion and revoked Traynoff's probation. The court then sentenced Traynoff to twelve months imprisonment, to be served consecutive to his state sentence. This appeal followed. We affirm.

■ Traynoff first argues that the district court lacked jurisdiction to reopen the Rule to Show Cause, which the government had previously agreed to dismiss. When initially brought, the district court exercised jurisdiction over this case under 18 U.S.C. § 3231 and former 18 U.S.C. § 3653. *See United States v. Abdul–Hamid,* 966 F.2d 1228, 1230–31 (7th Cir.1992). The court issued no order, either oral or written, dismissing the Rule to Show Cause. Having never disposed of the case the court did not lose jurisdiction over it. The court did not reopen the case because there was nothing for it to reopen. At any time Traynoff could have petitioned the court to enter the agreed order to dismiss. He did not do so before the United States rescinded its agreement to the dismissal and cannot now complain of the order's lack of finality.

■ Of course, the United States has great discretion over whom it chooses to prosecute. *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985); *United States v. Batchelder,* 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2203–04, 60 L.Ed.2d 755 (1979); *United States v. Giannattasio,* 979 F.2d 98, 100 (7th Cir.1992) ("A judge in our system does not have the authority to tell prosecutors which crimes to prosecute or when to prosecute them."). The government can unilaterally decide to dismiss its cases and does not need to wait for a court order. In open court AUSA King stated that if Traynoff received a twelve year state sentence he "would be recommending that we would dismiss the action here ... [by] submit[ting] an agreed order to the Court this afternoon." While such language appears conditional, the parties submitted such an order to the court the following Monday.[1] Nevertheless, the government later changed its mind and chose to again to pursue the Rule to Show Cause.

Citing *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), Traynoff asserts that once the government agreed to a dismissal it could not change its mind and that we must hold the United States to its promise. In *Santobello,* the defendant pleaded guilty to a lesser included offense in return for the prosecutor's agreement to make no recommendation as to the sentence. At the sentencing hearing six months later, a different prosecutor from the same office recommended the maximum sentence. *Id.* at 259, 92 S.Ct. at 497. The Court vacated the defendant's sentence and remanded for reconsideration, holding that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499.

■ *Santobello* does not aid Traynoff. The *Santobello* Court did not hold that the

---

1. The United States suggested that it may never have seen the order so that because King's remarks in court were conditional, the government did not agree or decide to dismiss. The agreed order did not bear the signature of any AUSA. However, a court order simply carries the signature of the judge entering it. While an agreed order may be accompanied by a separate page acknowledging the acceptance of its terms by the parties, the absence of such a document does not persuade us that defense counsel unilaterally submitted this order. The government could have presented affidavits in support of its contention but did not do so. In the absence of any such documents we will consider the order to constitute a true reflection of the government's intentions at the time of its submission.

government must fulfill every agreement or offer it makes. Rather, as we have consistently recognized, the Court was concerned with enforcing governmental promises that had induced the defendant to plead guilty. *See United States v. Jimenez*, 992 F.2d 131, 134 (7th Cir.1993); *United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1616, 123 L.Ed.2d 176 (1993); *United States v. Smith*, 953 F.2d 1060, 1066 (7th Cir.1992); *United States v. Verrusio*, 803 F.2d 885, 888 (7th Cir.1986). Indeed, in *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), the Court reiterated its concern over only those offers that had induced defendants to act to their detriment, not every rescinded governmental promise. *Mabry* involved a prosecutor who withdrew a formal plea offer and a defendant who subsequently pleaded guilty pursuant to a second plea proposal. On appeal, the defendant sought to enforce the original offer against the government. The Court rejected the defendant's argument and upheld the plea as voluntary because it "was in no sense induced by the prosecution's withdrawn offer." *Id.* at 510, 104 S.Ct. at 2548.

■ Both *Santobello* and *Mabry* indicate that the government must fulfill promises that induce a defendant to plead guilty. We assume that we must also hold the government to its agreements that reasonably cause criminal defendants to take other damaging actions. *See Bischel v. United States*, 32 F.3d 259, 264 (7th Cir.1994) (failure to appeal sentence because defendant believed the government would recommend a further reduction); *United States v. Eliason*, 3 F.3d 1149, 1153 (7th Cir.1993) ("[T]he due process clause requires prosecutors to scrupulously adhere to commitments made to suspects in which they induce the suspects to surrender their constitutional rights...."). In *United States v. Shaw*, 26 F.3d 700, 701–02 (7th Cir.1994), we noted that the Supreme Court "has insisted that errors by the [government] cannot prevent application of the law unless the person asserting estoppel establishes all of the requirements of this doctrine at common law—including a detrimental change of position in reasonable reliance on the [offer or agreement]." Reasonable and detrimental reliance on behalf of a defendant is thus a necessity; without it we will not compel the government to discharge a withdrawn agreement. Here, Traynoff has not pointed to any action he took or forswore in reliance on AUSA King's agreement to dismiss the Rule to Show Cause. Traynoff had already pleaded guilty in state court before the November 18 hearing and AUSA King's promise had no effect on Traynoff's state sentence. From the record before us we can see no disadvantage to Traynoff from this agreement and therefore will not enforce it against the government.[2]

■ Although we affirm the district court's order, two additional points merit discussion. First, the United States seemed to imply that we should not hold it to this agreement in part because it was made by AUSA King, who was not assigned to and was unfamiliar with this case. The government's brief stated that "the defendant and his attorney had known since at least 1987 that it was not [AUSA] King but [AUSA] Ferguson who was assigned to the case and who would therefore be the proper person to make [the decision to dismiss]." AUSAs are not themselves parties but represent the United States. By doing so at the November 18 hearing, AUSA King became the proper person for defense counsel to speak with about a possible dismissal. Had the court entered the order or had Traynoff reasonably relied to his detriment on it we would not hesitate to enforce it against the government simply because AUSA King, not AUSA Ferguson, had agreed to the dismissal. As members of the same office AUSAs have the "burden of 'letting the left hand know what the right hand is doing' or has done." *Santobello*, 404 U.S. at 262, 92 S.Ct. at 499. If he was unfamiliar with the case and the "government's" view of its merits, AUSA King should not have agreed to dismiss the matter. Here, his action did not affect the government's interests because of the district

---

2. The district court refused to enforce the agreement because of the hurried way it was reached as well as the absence of any procedure to validate it. We affirm the court's decision because of the lack of detrimental reliance and need not determine whether we would otherwise enforce this agreement.

court's clerical oversight, but in the next case the United States might not escape the consequences of similar conduct.

Second, the government stated that "it was the position of the United States in the District Court that the defendant's own counsel, knowing the assigned [AUSA] to be absent, sought out [AUSA] King and talked him into dismissing the case." We question whether defense counsel could have forced King to do anything involuntarily, and in any event, the record does not support such a contention. We see no value to this statement other than as an attempt to cast defense counsel in a poor light. The government's argument about never having seen the agreed order before its submission to the court, *see ante* at n. 1, also implied that defense counsel may have acted inappropriately in this case. We wish to express our dismay at such unsupported intimations, especially by the prosecuting arm of the United States government whose mission it is not simply to triumph. *See Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1934).

For the foregoing reasons, we affirm the decision of the district court.

AFFIRMED.