74 F.3d 1242
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Kevin J. WILLIAMS, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 94-3712.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 11, 1995.*
Decided Jan. 2, 1996.
 
 Before FLAUM, MANION and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Kevin Williams appeals from the district court's denial of his motion, pursuant to 28 U.S.C. Sec. 2255, for relief from his criminal conviction. He argues that the district court erred in denying his motion and abused its discretion by denying him an evidentiary hearing. We affirm.
 
 
 2
 * On September 12, 1991, a federal grand jury indicted Kevin Williams and three other individuals. Williams was charged with conspiracy and with possession of cocaine with intent to distribute. He later entered into a plea agreement, whereby he pled guilty to possession and the government moved to dismiss the conspiracy count.[1]
 
 
 3
 What occurred at the September 23, 1992, sentencing hearing is not entirely clear; no transcript has been provided, though Williams requested one in a motion filed with the district court on July 11, 1994. The addendum to the presentence report indicates, however, that the defense filed written objections to the presentence report's reliance on the statement of Sina DeGroot, Williams's ex-girlfriend, regarding the quantity of cocaine that Williams had possessed. The DeGroot statement described a series of cocaine transactions between Williams and his co-defendant Robert Hay. To estimate the drug quantity that Williams handled, the presentence report further relied on Hay's statement, the statements of other cooperating witnesses, and the size of William's financial transactions, primarily derived from a series of Western Union wire transfers. The defense also objected, among other things, to a two-level sentencing enhancement pursuant to U.S.S.G. Sec. 3B1.1 for Williams's alleged supervisory role in the conspiracy.
 
 
 4
 At the sentencing hearing, the defense withdrew its objection to the DeGroot statement, and the government agreed that he had not held a supervisory position. Over Williams's objections, however, the court also added two levels to Williams's offense level for obstruction of justice, based on Williams's efforts to coerce DeGroot to recant her statement.
 
 
 5
 Williams did not file a direct appeal. He alleges that he was held incommunicado in various correctional facilities and was prevented from contacting his attorney until two months had passed. He states that he was transferred several times to testify in other trials, but was never actually used. In July 1993, the same district court that had sentenced Williams found that co-defendant Robert Hay had possessed only 1.84 kilograms of cocaine, largely because it discounted DeGroot's credibility. When Williams became aware of Hay's sentencing and realized that the government was not going to reduce his own sentence, he brought the present action.
 
 
 6
 Williams's section 2255 motion was accompanied by a lengthy memorandum detailing the reasons Williams believed he was entitled to relief. The district court gave him additional time to argue why he had not defaulted his claims for relief by failing to raise them on direct appeal. Williams responded with a supplementary memorandum. The district court then determined that he had deliberately chosen not to appeal, and that no evidentiary hearing was required to decide the motion. Williams appeals.
 
 II
 
 7
 Williams's central complaint is that his sentence was based in part on his possession of 3.1 kilograms of cocaine. See U.S.S.G. Sec. 1B1.3 (relevant conduct). He maintains that the correct amount is 1.86 kilograms. Williams argues that he purchased nearly all of his cocaine from Hay and should have been held responsible for a similar amount. Williams also claims that prior to his sentencing the government suppressed evidence impeaching DeGroot's credibility.
 
 
 8
 Section 2255 relief is limited to "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice. Moreover, in addition to restraints on the types of issues that may be raised, the failure to raise issues on direct appeal bars a petitioner from raising them in a section 2255 proceeding unless he or she makes a showing of good cause for and prejudice from that failure."[2] Bischel v. United States, 32 F.3d 259, 263 (7th Cir.1994) (citations and internal quotation marks omitted). The cause and prejudice standard applies equally where a petitioner completely failed to appeal. Johnson v. United States, 838 F.2d 201, 203-04 (7th Cir.1988). We review the lower court's denial of a section 2255 motion de novo with regard to questions of law, and for clear error with regard to questions of fact. Stoia v. United States, 22 F.3d 766, 768 (7th Cir.1994).
 
 
 9
 To show cause, Williams must demonstrate that an external objective factor impeded his ability to appeal. Murray v. Carrier, 477 U.S. 478, 488 (1986). For example, "showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials,' made compliance impracticable, would constitute cause under this standard." Id. (citations omitted). Williams first argues official interference, maintaining that he was denied access to counsel during his initial incarceration and thus did not, as the district court found, voluntarily waive his right to appeal. Although this troubling allegation, if true, would likely establish cause for his failure to appeal, he has not shown prejudice because he completely fails to explain what his grounds for direct appeal would have been. The challenges he now brings, as discussed below, all turn on evidence he supposedly acquired long after the time for direct appeal has passed.[3]
 
 
 10
 Williams next argues that the government fraudulently induced him to waive his right to challenge the cocaine weight at the sentencing hearing. Williams states that he withdrew his objections to the DeGroot statement in exchange for the government's oral promise that "in return the Asst. U.S. Attorney would not argue for the supervisor enhancement and when [Williams] was done being used at upcoming proceedings the Asst. U.S. Attorney would motion for a sentence reduction via Rule 35."[4] (Supp. to Section 2255 Motion at 6.)[5] He complains that the government never brought the promised Rule 35(b) motion.
 
 
 11
 We have applied contract theory to the analysis of plea agreements and held that "[t]he government must fulfill any promise that it expressly or impliedly makes in exchange for a defendant's guilty plea." United States v. Ingram, 979 F.2d 1179, 1184 (7th Cir.1992), cert. denied, 113 S.Ct. 1616 (1993). By corollary, "we must also hold the government to its agreements that reasonably cause criminal defendants to take other damaging actions." United States v. Traynoff, 53 F.3d 168, 171 (7th Cir.), cert. denied, 116 S.Ct. 327 (1995); Bischel v. United States, 32 F.3d 259, 264 (7th Cir.1994) (failure to appeal sentence because defendant believed the government would recommend a further reduction). However, this rule extends "only to those offers that had induced defendants to act to their detriment, not every rescinded governmental promise." Traynoff, 53 F.3d at 171.
 
 
 12
 If the government did make the promise, and Williams relied on it to his detriment, such as by failing to challenge or appeal his sentence, he might have grounds to bring a section 2255 challenge asserting a due process violation. See Bischel, 32 F.3d at 264. We have held, however, that the parties have a duty to memorialize such understandings. Id. Williams has provided no evidence of the existence of a promise, and the record is silent. And, in any event, it does not appear that the government breached the promise alleged. At the sentencing hearing, the prosecutor did not pursue the supervisory role enhancement. It would have been clear to an objectively reasonable person from the nature of the promise that the Rule 35 motion was contingent on the use of Williams to testify. Through no fault of his own, Williams never provided substantial assistance such as to merit a Rule 35 sentence reduction.[6] That the government did not use him would not prove that its promise was a sham; on the contrary, he states that he was transferred to testify a number of times, but that the government found in each case that it did not need to use him.
 
 
 13
 Williams next argues that he could not have filed an effective appeal for lack of essential information that he discovered when he became aware of the results of the Hay sentencing hearing and, consequently, the government's information concerning DeGroot's poor credibility. He further argues that the government violated its disclosure obligation under Brady v. Maryland, 373 U.S. 83, 87 (1963), by not telling him before sentencing that a government investigator, who testified at the later Hay sentencing, had concluded that DeGroot was not credible. Finally, he argues that the cocaine weight used for his sentencing violated his right to have his sentence based on accurate information.
 
 
 14
 Due process entitles a defendant to be sentenced on the basis of accurate information. United States v. Pless, 982 F.2d 1118, 1127 (7th Cir.1992). "If a defendant raises the possibility of reliance on misinformation in the [presentence report], the court must provide an opportunity to rebut the report." Id.; see also U.S.S.G. Sec. 6A1.3(a) (policy statement). Williams, however, withdrew his objection and thus waived his right of rebuttal. According to his version of events, he did so in voluntary exchange for the government's promise to drop the supervisory enhancement issue, coupled with the prospect of a future Rule 35 motion. It was a strategically plausible decision: the difference between the cocaine weights asserted by the government and by Williams would have translated into two levels in sentencing, see U.S.S.G. Sec. 2D1.1 (table), the same as the two-level supervisory enhancement that Williams would have risked without the deal.
 
 
 15
 To make a successful claim under Brady, a defendant "must establish (1) that the prosecutor suppressed evidence; (2) that such evidence was favorable to the defense; and (3) that the suppressed evidence was material." United States v. Hartmann, 958 F.2d 774, 790 (7th Cir.1992). Brady may be used to challenge a prosecutor's failure to reveal favorable evidence to the accused at sentencing. See, e.g., United States v. Nash, 29 F.3d 1195, 1202 n. 3 (7th Cir.1994). "Suppression of impeachment evidence can also give rise to a Brady violation." United States v. Kozinski, 16 F.3d 795, 819 (7th Cir.1994) (citing Giglio v. United States, 405 U.S. 150 (1972)).
 
 
 16
 It is difficult to characterize the agent's testimony at the Hay sentencing as Brady material. The speculative basis of the agent's assessment of DeGroot's credibility is reflected in this key exchange with Hay's defense attorney:
 
 
 17
 Q: Now, you've talked with Sina DeGroot about [the quantity of cocaine]; is that correct? What's your opinion as far as her credibility with respect to amounts?
 
 
 18
 A: I don't have any information that really supports her credibility. I felt when I first talked to her that possibly she was getting these amounts from Kevin Williams.... He's very loud, likes to talk, likes to brag, I felt that she was getting these amounts not from what she saw but what Kevin Williams told her he was getting. I did ask her about that later on. She said no, she saw it, but I guess I have to say Sina DeGroot does not have a track record that I can base anything on as far as credibility. This is all I know about Sina DeGroot.
 
 
 19
 (Hay Sentencing Tr. at 12-13.) The agent had no concrete information concerning DeGroot's credibility. He merely inferred that her information might be inaccurate from inconsistencies in her statements, from the fact that Williams's financial transactions seemed too small to substantiate the quantity of cocaine he claimed to be buying from Hay, and from Williams's own propensity to brag. These facts were already known to Williams. The agent also relied on his high assessment of Hay's credibility, which he developed only from working with Hay in the months following the Williams sentencing.
 
 
 20
 Even if the agent's opinion implicated Brady, and assuming that the agent held that opinion at the time of the Williams sentencing, Williams's claim fails because the opinion was not material. "The evidence [withheld by the government] is material only if there is reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Dweck, 913 F.2d 365, 371 (7th Cir.1990) (brackets in original) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). Williams must, but can not, show that had he known the agent's opinion it was reasonably probable he would have rejected the deal offered by the government and successfully contested the drug quantity. Williams already had the relevant arguments at his disposal, having read the presentence report: he could have impeached DeGroot, argued the financial transactions were too small, and testified on his own behalf. The agent's subjective impressions of DeGroot's credibility are of too little substance to have been reasonably probable to alter the outcome of the sentencing.
 
 
 21
 Finally, Williams is aggrieved that the district court denied him an evidentiary hearing. The district court has discretion to deny an evidentiary hearing if "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. Sec. 2255. The district court judge was familiar with the details of his claims, having presided over the acceptance of his guilty plea and sentencing, making him "uniquely suited to determine whether a hearing was necessary." Aleman v. United States, 878 F.2d 1009, 1012 (7th Cir.1989). Because the record shows that Williams's claims, as discussed above, are meritless, and because Williams has not alleged facts outside the record that, if proven, would entitle him to relief, it was well within the district court's discretion to deny the hearing.
 
 III
 
 22
 The district court's judgment is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that the parties could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Petitioner-Appellant filed a statement on July 14, 1995, requesting oral argument. Upon consideration of that statement, the briefs, and the record, we deny the request. Accordingly, the appeal is submitted on the briefs and the record
 
 
 [1]
 A clause in the plea agreement reserved the defendant's right to appeal the district court's denial of an earlier Speedy Trial Act motion. (Williams Plea Agreement p 20.) Although Williams frequently stresses this reservation as evidence of his intent to appeal, he has not attempted to preserve the speedy trial issue itself
 
 
 [2]
 The "miscarriage of justice" exception to cause and prejudice is narrow: "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Murray v. Carrier, 477 U.S. 478, 496 (1986); see also Schlup v. Delo, 115 S.Ct. 851 (1995)
 
 
 [3]
 Williams now alleges that his counsel was constitutionally ineffective for failing to file a notice of appeal. (Appellant's Br. at 8.) He has waived this claim for failure to present it, even implicitly, to the district court. See Dortch v. O'Leary, 863 F.2d 1337, 1342 (7th Cir.1988), cert. denied, 490 U.S. 1049 (1989). Significantly, he does not allege that he ever told his attorney to file an appeal, but instead that he assumed an appeal would be filed. Cf. Castellanos v. United States, 26 F.3d 717 (7th Cir.1994) (cause and prejudice presumed where counsel fails to take appeal despite defendant's request). Nor, as discussed above, has he shown prejudice
 
 
 [4]
 Federal Rule of Criminal Procedure 35(b) provides in part: "Reduction of Sentence for Changed Circumstances. The court, on motion of the Government made within one year after the imposition of the sentence, may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person...."
 
 
 [5]
 Williams makes only a tangential reference to this exchange in his appellate brief, see Appellant's Brief at 7, but we find it sufficient to preserve an issue that he developed fully before the district court
 
 
 [6]
 Williams stated that he also provided the government with inculpatory physical evidence against another defendant. The government still had the discretion to determine whether Williams's assistance was "substantial" enough, without his having testified at trial, to support bringing a Rule 35 motion. Id. at 265 n. 5