UNITED STATES of America

v.

Shaabri TAYLOR, a/k/a
"Eric Johnson".

Criminal No. 98–338.

United States District Court,
D. New Jersey.

Oct. 28, 1999.

Order Denying Motion to Amend
Nov. 12, 1999.

Faith S. Hochberg, United States Attorney, Kevin T. Smith, Assistant United States Attorney, United States Attorney's Office, Camden, NJ, for U.S.

Richard Coughlin, Federal Public Defender, Lisa C. Evans, Assistant Federal Public Defender, Camden, NJ, for Defendant, Shaabri Taylor.

## OPINION

ORLOFSKY, District Judge.

This case requires this Court to determine whether the Government can cure the unexpected failure of its principal trial witnesses to identify the defendant by offering expert testimony which was never disclosed to defense counsel prior to trial. In addition, if the Court precludes the Government from offering this expert testimony, the Government seeks to rescind an agreement to use a post-arrest statement made by the Defendant for impeachment purposes only, and introduce the statement in its case-in-chief. More specifically, before me is the motion of the United States to admit into evidence two fingerprint cards and the related expert testimony of a police officer who was present at the time the fingerprints were taken and who observed the fingerprinting process. The police officer is expected to offer expert testimony that the fingerprints in each case are those of the Defendant. The Government has made this motion in the middle of trial as a result of the inability of the two Newark police officers who made the arrest to identify the Defendant, Shaabri Taylor, a/k/a "Eric Johnson," as the individual who possessed the weapon which is the subject of the indictment in this case.[1] The Government also suggests that if this Court denies its motion to admit the fingerprint cards and the expert testimony, it will recant its agreement with the Defendant's counsel, Assistant Federal Public Defender, Lisa C. Evans, Esq., and seek to introduce a statement made by the

Defendant to an agent of the Bureau of Alcohol, Tobacco, and Firearms in its case-in-chief.

Counsel for the Defendant contends that the admission of the fingerprint cards and expert testimony violate Rule 16 of the Federal Rules of Criminal Procedure, as well as a Memorandum Opinion and Order, filed by this Court on November 12, 1998, that required the Government to "provide Taylor with any expert reports at least one week before trial is scheduled to commence." *United States v. Taylor,* No. 98–338 at 7 (D.N.J. Nov. 12, 1998). Defendant's counsel further contends that, because she detrimentally relied on the Government's promise to use the Defendant's statement on cross-examination for purposes of impeachment, the Government should be precluded from introducing the statement in its case-in-chief. For the reasons set forth below, I shall deny the admission of the expert testimony, pursuant to Federal Rule of Criminal Procedure 16(d)(2), and deny the admission of the fingerprint cards, which would be meaningless to the jury without the testimony of an expert witness to explain them. Furthermore, because I find that the Defendant detrimentally relied on the Government's promise only to use the Defendant's statement during cross-examination for impeachment purposes should the Defendant choose to testify, I shall preclude the admission of the Defendant's statement in the Government's case-in-chief.

### 1. The Motion to Admit the Fingerprint Cards and Expert Testimony

On August 24, 1998, the Defendant moved before this Court to compel the Government to provide, among other things, written summaries of the testimony of any experts it intended to call at trial. *See* Notice of Motion (filed Aug. 24, 1998). On November 12, 1998, I granted the motion, ordering that "[a]t least one week

---

1. In a Superseding Indictment, the Defendant is charged as a felon in possession of a fire-arm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 2.

before trial is scheduled to commence, the Government will provide Taylor with a written summary of the testimony, qualifications, opinions of any expert witnesses who may testify for the Government at trial. . . ." *See United States v. Taylor,* No. 98–338 (D.N.J. Nov. 12, 1998).

Rule 16 (a)(1)(E) of the Federal Rules of Criminal Procedure provides, in relevant part:

> At the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief. . . . The summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications.

Fed.R.Crim.P. 16(a)(1)(E). The Advisory Committee Notes to Rule 16(a)(1)(E) observe that:

> The amendment is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.

*Id.* (1993 advisory committee's notes); *see also United States v. Richmond,* 153 F.R.D. 7, 8 (D.Mass.1994). Rule 16 further provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

Fed.R.Crim.P. 16(d)(2).

At oral argument on its motion, the Government contended that its motion does not violate my previous Order or Rule 16.

Specifically, the Government argues that it could not have disclosed to the Defendant its intention to present expert testimony because it first became aware of the need to present expert testimony relating to the fingerprint cards after its first witness, Detective Barron, testified on October 26, 1999.

However the Government fashions the argument, at the end of the day, it is seeking to circumvent the language and spirit of Rule 16. The Rule necessarily requires the Government to disclose, through a written summary, all of the expert testimony it "intends to use." Fed. R.Crim.P. 16(a)(1)(E). In this case, the Government is essentially arguing that because it never intended to use expert testimony regarding the fingerprint cards, by offering this testimony in the middle of the trial, it has not violated Rule 16. The plain language of the Rule, however, clearly refutes the Government's argument. In reaching this conclusion, one need only consult the well settled principles governing the interpretation of Rule 16.

■ "In selecting a proper sanction, a court should typically consider (1) the reasons the government delayed producing requested materials, including whether the government acted in bad faith; (2) the extent of prejudice to defendant as a result of the delay; and (3) the feasibility of curing the prejudice with a continuance." *United States v. Charley,* 189 F.3d 1251, 1261 (10th Cir.1999)(quoting *United States v. Gonzales,* 164 F.3d 1285, 1292 (10th Cir.1999)); *see also* 2 Charles Alan Wright, Federal Practice and Procedure § 260 (2d ed.1982).

■ This case has a perplexing procedural history. There have been five continuances of the trial, a Speedy Trial Act violation, which resulted in the dismissal of the indictment without prejudice and the filing of a Superseding Indictment, and a change of counsel for the Government. The Government's motion to introduce the fingerprint cards and expert testimony

was filed by the Government as a result of the inability of both arresting officers to identify the Defendant, Shaabri Taylor. The Government clearly states that it did not expect to introduce such evidence and, to demonstrate its good faith, notes that the expert examination of the fingerprint cards was not conducted until October 27, 1999. Under the circumstances of this case, I find that the United States did not act in bad faith in failing to disclose the expert's name and the substance of his testimony prior to trial. That however, is only the first factor this Court must consider.

The Government contends that the admission of the fingerprint cards and expert testimony at this late date would not prejudice the Defendant because he has been in possession of the underlying facts since the day of his fingerprinting. *See* Govt. Motion at 4. I disagree.

At this point in the trial, the Government has essentially presented its entire case-in-chief and has discovered, albeit unexpectedly and to its dismay, that it is unable to prove that the Defendant was the individual arrested on the date in question. The Government now desires a second bite of the apple to prove the Defendant's identity through fingerprint evidence—to go back and exploit evidence that has always been in the Government's possession but that it opted not to pursue. In support of its motion, the Government argues that its second bite will not cause irreparable prejudice.

Clearly, the Government's "change of heart" prejudiced the Defendant by preventing him from securing his own expert to interpret the evidence against him. What is not so blatant is the invidious prejudice inherent in permitting the Government, in the middle of trial, to cure a deficiency in its case. Throughout the pre-trial period, counsel for the Defendant was given no inkling that the fingerprints would be a material part of the Government's case and, thus, she prepared the defense accordingly. Had Ms. Evans known that the Government would present expert testimony on the fingerprint cards, she might have changed her opening statement, a portion of her cross-examination, or adopted a different trial strategy. I am certain that in the unique circumstances of this case, the Defendant would be significantly prejudiced if I granted the Government's motion. To find otherwise would set a deeply disturbing precedent. In short, the Government's conduct presents the quintessential case of "surprise" that the drafters of Rule 16(a)(1)(E) intended to prohibit.

In light of this finding, I must consider whether the prejudice to the Defendant can be remedied by a continuance to allow the Defendant to review the evidence and secure an expert. While "[a] continuance may normally be the most desirable remedy for the government's failure to comply with a discovery order," *see United States v. Wicker*, 848 F.2d 1059, 1062 (10th Cir. 1988), I find that, in this case, a sixth continuance will not alleviate the prejudice to the Defendant. As the parties are well aware, I already have granted five continuances in this matter. The jury has been selected and the trial has begun. In light of the empanelment of a jury, whose members were advised during voir dire that the case would take two to three days to try and the delay that would result to allow the Defendant the opportunity to obtain an expert witness, I find that this "problem" cannot be cured by a continuance of the trial.

The Government contends that "where there has been surprise with respect to the anticipated testimony, suppression of the highly probative forensic evidence offered by the Government would not be in the interests of justice...." Govt. Letter Reply at 2 (dated Oct. 27, 1999). In determining what is "just," however, I must consider the plight of the Defendant and what can only be described as the negligence of the United States Attorney's Office in this case. As the Supreme Court

noted in *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935):

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Id.* at 88, 55 S.Ct. 629. In this case, the Government, aware of the lengthy delays in the trial date, failed to pursue a reliable method of identifying the Defendant as the person arrested in this case -- a method that would not be subject to the frailties of human memory. Although I am cognizant of the difficulties associated with the preparation of cases involving firearms, I am frankly perplexed by the neglect displayed by the United States Attorney's Office in this case. In this case, the interests of justice clearly weigh in favor of the Defendant. Accordingly, I shall deny the admission of the expert testimony and, because the fingerprint cards would be meaningless to a jury without an expert witness to explain them, I shall also deny the admission of the fingerprint cards.

## 2. The Post–Arrest Statement

The Government also seeks to introduce in its case-in-chief a statement allegedly made by the Defendant to an agent of the Bureau of Alcohol, Tobacco, and Firearms, to prove that the Defendant was the individual charged in the offense. Counsel for the Defendant argues that the statement is the subject of an agreement between herself and the prior Assistant United States Attorney handling the case, Louise T. Lester, Esq., and that to allow the admission of the statement would be contrary to law. For the reasons set forth below, at this time I shall preclude the Government from admitting the Defendant's post-arrest statement to the ATF agent during its case-in-chief.

On August 24, 1998, the Defendant moved this Court to conduct, among other things, an evidentiary hearing to determine the admissibility of statements made by the Defendant. At that time, the United States maintained that the only statement the Defendant made was to identify himself as "Shaabri Taylor." *See United States v. Shaabri Taylor,* Criminal No. 98–338 at 7 (D.N.J. Nov. 12, 1998). Considering only that statement, I denied the Defendant's motion. *See id.* at 8.

On February 17, 1999, Assistant United States Attorney Louise T. Lester, Esq., notified counsel for the Defendant, Assistant Federal Public Defender, Lisa C. Evans, Esq., that after the Defendant's arrest, he told Special Agent Michael J. Puskas that "he was just sitting on a porch eating chicken when the police came up and showed him a gun they had found in a dumpster. [The Defendant] stated that the police arrested him because he was the oldest person sitting on the porch. He stated that the gun was not his." Letter from Louise T. Lester, Esq. to Lisa C. Evans, Esq. (dated Feb. 17, 1999). Thereafter, Ms. Evans notified Ms. Lester of her intention to file a motion to suppress the statement but was informed by Ms. Lester that the Government would only use the statement for impeachment purposes if the Defendant testified. *See* Evans Affidavit at ¶ 3. Ms. Evans did not file the motion to suppress in direct reliance on the Government's representation. *See id.* at ¶ 4. The Government does not contest the existence or the terms of the agreement; rather, at oral argument, the

Government asserted that it would move to introduce the statement in its case-in-chief if this Court denied the motion to introduce the fingerprint cards and expert testimony.

█ · Case law indicates that while the Government need not fulfill every agreement or offer it makes, *see e.g., Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)(referencing only plea agreements as government promises which must be fulfilled), it must uphold promises that induce a defendant to take what the Seventh Circuit has called "damaging actions." *United States v. Traynoff,* 53 F.3d 168, 171 (7th Cir.1995) (citing *Bischel v. United States,* 32 F.3d 259, 264 (7th Cir.1994)(stating that if defendant failed to appeal sentence because he believed the government would recommend further reduction then the government must be held to its promise); *United States v. Eliason,* 3 F.3d 1149, 1153 (7th Cir.1993)("[T]he due process clause requires prosecutors to scrupulously adhere to commitments made to suspects in which they induce the suspects to surrender their constitutional rights ... ")); *see also United States v. Ruggles,* 70 F.3d 262, 265 (2d Cir.1995)(stating that a suspect's post-arrest statements may be involuntary when induced by government's unfulfillable promises); *United States v. Heatley,* 39 F.Supp.2d 287, 299 (S.D.N.Y.1998) (government held to promise when relied upon by defendant entering proffer session). In such cases, "when ... a defendant waives rights in reliance upon a government promise, due process requires that the defendant be entitled to have the government held to its end of the bargain." *Heatley,* 39 F.Supp.2d at 299; *see also Traynoff,* 53 F.3d at 171.

█ In this case, the Defendant detrimentally relied on the Government's promise, or stated differently, he was induced to take a "damaging action." The Government promised the Defendant that it would not present the Defendant's statement as part of its case-in-chief but would limit its use to impeach the Defendant's testimony should he choose to testify. In reliance on this statement, the Defendant not only did not move this Court to conduct an evidentiary hearing but the Defendant's counsel relied on the promise in preparing the defense.

The most important factor this Court must consider is whether the Defendant has been prejudiced by his reliance on the Government's promise. I find that the prejudice in this instance is the same as it is regarding the expert testimony. The statement itself had to be considered by the Defendant and his counsel in deciding whether or not he would testify. This determination inevitably affects counsel's opening statement, the cross-examination of witnesses, and the Defendant's trial strategy. Such prejudice simply cannot be cured by conducting an evidentiary hearing in the middle of the trial to determine whether the statement was voluntarily made. In short, the egg cannot be unscrambled.

## 3. CONCLUSION

For the reasons set forth above, I shall deny the Government's motion to introduce expert testimony regarding the fingerprint cards pursuant to Federal Rule of Criminal Procedure 16. In addition, I shall deny the motion to admit the fingerprint cards into evidence because without expert testimony, the fingerprint cards would be meaningless to the jury. Furthermore, I shall preclude the admission of the post-arrest statement by the Defendant to the agent of the Bureau of Alcohol, Tobacco, and Firearms during the Government's case-in-chief because I find that the Defendant detrimentally relied on the Government's promise and would be prejudiced if the Government were allowed to withdraw from its agreement to use the statement for impeachment purposes only.

### ADDENDUM TO OPINION

On November 10, 1999, the United States filed a motion to amend my opinion

in this case, requesting that I expunge all references made to the negligence of the United States Attorney's Office.

Specifically, the Government objects to my observations that: (1) the Government "failed to pursue a reliable method of identifying the Defendant as the person arrested in this case ...;" (2) I was "perplexed by the neglect displayed by the United States Attorney's Office in this case;" and (3) "[i]n determining what is 'just,' ... I must consider the plight of the Defendant and what can only be described as the negligence of the United States Attorney's Office in this case." Gov't Mem. in Supp. of Mot. to Amend at 2 (filed Nov. 10, 1999). Incredibly, the Government also objects to my citation of the Supreme Court's opinion in *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), in which the Court eloquently stated that " ... while [a United States Attorney] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *See id.* at 3 (quoting *Berger*, 295 U.S. at 88, 55 S.Ct. 629).

First, it should be made unmistakably clear that Assistant United States Attorney Kevin T. Smith, Esq. was not negligent in any way. Indeed, the negligence discussed in my opinion occurred prior to Mr. Smith's substitution as Government counsel, which occurred on the eve of trial.

Instead, the blameworthy conduct that infected this case almost from its inception lies at the feet of the institution itself, that is, the Office of the United States Attorney. Before the trial, I was required by law to dismiss without prejudice the original Indictment because the Government had carelessly and negligently allowed the Defendant's trial to be delayed fifty-two days beyond the deadline established by the Speedy Trial Act. *See Supra* at 422. [1] As I pointed out in my bench opinion of October 15, 1999 dismissing the indictment without prejudice, "[b]y no means should the decision of this Court be interpreted as condoning the behavior of the United States Attorney's Office. Counsel's negligence was sloppy and unprofessional and must not be repeated." October 15, 1999 Bench Opinion at 9. The case was then presented once more to the Grand Jury and a Superseding Indictment was returned. Having overcome that obstacle, at trial the Government was confronted with an unexpected failure of its proofs when the two arresting officers could not identify the Defendant.

Instead of gracefully accepting the futility of its case and moving to dismiss the Superseding Indictment, the Government attempted to circumvent the Federal Rules of Criminal Procedure and well-settled precedent by moving to admit into evidence expert testimony it had never disclosed to Defense Counsel, and rescind an agreement it had made with Defense Counsel regarding the use of a post-arrest statement made by the Defendant. In light of the undisputed conduct of the Government in this case, in my original Opinion I cited to the following language from *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935):

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suf-

---

1. In dismissing the Indictment without prejudice, I considered, pursuant to 18 U.S.C. § 3162(a)(2) and *United States v. Taylor*, 487 U.S. 326, 334, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988), the severity of the offense, the Government's inadvertence which led to the violation of the Speedy Trial Act, the impact of reprosecution, and the absence of any material prejudice to the Defendant.

fer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Supra* at 423 (quoting *Berger*, 295 U.S. at 88, 55 S.Ct. 629).

In its zeal to obtain a conviction in this case, the United States Attorney's Office has lost its way. This Court is painfully aware that as a result of its decision denying the Government's motion, there was insufficient evidence to allow the case to be submitted to the jury for its consideration. Despite this harsh result, it must be remembered and repeated again that the duty of the United States Attorney *is not simply to win a case, but to ensure that justice be done.* As Justice (then Judge) Cardozo once observed in a similar case in which probative evidence was suppressed, "[t]here is no blinking the consequences. The criminal is to go free because the constable has blundered." *People v. Defore*, 242 N.Y. 13, 21, 150 N.E. 585 (1926).

So too in this case, a blunder has occurred. Whether it was an error in the preparation of a witness, or an error in prosecutorial judgment to continue to prosecute a case at all costs, is of no moment. What matters is that Justice Be Done. It has. Accordingly, the Government's motion to amend this Court's Opinion of October 28, 1999 is denied. The Court will enter an appropriate order.